| | | |
|---|---|---|
| Joe Hand Promotions, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:20-cv-382-TRM-DCP |
| v. | ) | |
| | ) | **Jury Demand** |
| James H. Griffith, Jr. and Lisa Lesley, | ) | |
| | ) | |
| Defendants, | ) | |
| James H. Griffith, Jr. and Lisa Lesley, | ) | |
| | ) | |
| Counter-plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Joe Hand Promotions, Inc., | ) | |
| | ) | |
| Counter-defendant | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Lisa Lesley ("Defendant") answers the Complaint as follows:

### JURISDICTION AND VENUE

1.     Jurisdiction is proper as this action arises under the copyright laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright) as this civil action is brought under the Copyright Act of the United States, 17 U.S.C. § 101, et seq. and the Communications Act of 1934, as amended, 47 U.S.C. § 553 (generally referred to as "Cable Piracy") and 47 U.S.C. § 605 (generally referred to as "Satellite Piracy").

**Response:       Admit jurisdiction, deny any wrongdoing.**

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 1400(a) because a substantial part of the events giving rise to the claims occurred in this District and/or Defendants reside in this District.

1

**Response:** **Admit venue, deny any wrongdoing.**

## THE PARTIES

3. Plaintiff, Joe Hand Promotions, Inc. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 407 E. Pennsylvania Blvd., Feasterville, PA 19053.

**Response:** **Defendant is without sufficient information or knowledge to admit or deny this allegation.**

4. Plaintiff is a company that specializes in distributing and licensing premier sporting events to commercial/non-residential establishments including bars, restaurants, clubhouses, shops, and similar locations.

**Response:** **Defendant is without sufficient information or knowledge to admit or deny this allegation.**

5. By written agreement with the promoters of the event, Plaintiff was granted the exclusive right to commercially distribute the audiovisual presentation of the *Floyd Mayweather, Jr. vs. Conor McGregor* boxing match, including all undercard bouts and commentary, on Saturday, August 26, 2017 (the "Program").

**Response:** **Defendant is without sufficient information or knowledge to admit or deny this allegation.**

6. By written agreement with the owner of the registered copyright [PA 2-066-333] of the Program, Plaintiff was assigned ownership of the right to distribute 17 U.S.C. § 106(3) and authorize the public performance 17 U.S.C. § 106(4) of the Program.

**Response:** **Defendant is without sufficient information or knowledge to admit or deny this allegation. However, Defendant denies anyone can be "assigned ownership of the right to distribute" under the Copyright Act. One either owns the copyright or possesses a license.**

2

7. Upon information and belief, Defendant JAMES H. GRIFFITH, JR. resides in the State of Tennessee. On the date of the Program, Defendant owned and operated an establishment known as CJ's Sports Bar located at 516 Morelock Street, Kingsport, TN 37660 (the "Establishment").

**Response: Admit that James H. Griffith Jr. operated a business known as CJ's Sports Bar at the address listed. Defendant is without sufficient information or knowledge to determine whether Mr. Griffith did so under an assumed name or as an agent of legal entity. Defendant otherwise objects because the boilerplate complaint in this matter makes confusing use of the term "Establishment." At times it suggests it is the business operation of the aforementioned business. Other times, it makes use of the term to designate an address or physical location. Other times, it suggests there are owners other than James H. Griffith – contradicting itself. As a result, Defendant will treat the term "Establishment" as the business operated solely by Defendant James H. Griffth, Jr. at the address provided, not as the address itself.**

8. Upon information and belief, by virtue of his above position with the Establishment, Defendant JAMES H. GRIFFITH, JR. had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment at all times relevant to Plaintiff's claims.

**Response: This allegation is not directed at the Defendant and, therefore, no response is required of the Defendant.**

9. Upon information and belief, Defendant LISA LESLEY resides in the State of Tennessee. On the date of the Program, Defendant leased the Establishment and advertised and directly participated in and/or assisted in the Establishment's unauthorized exhibition of the Program.

**Response: Defendant admits she resides in Tennessee and admits she leased a portion of 516 Morelock Street, Kingsport, Tennessee. Defendant denies she leased a portion of any business operation. Defendant denies Mr. Griffith's business directly participated or assisted in the display of the Program. Defendant denies any advertisement of the program by Mr.**

3

**Griffith's business. Defendant admits she participated in the display of the Program with assistance from Showtime Networks, Inc. Otherwise denied.**

**FACTS**

10. The Program garnered widespread media coverage, public interest, and was reported to be the most anticipated Pay-Per-View event in history. Plaintiff licensed the Program to over 6,000 establishments nationwide authorizing them to exhibit the Program to their patrons, customers, members, and/or guests, granting such authorization after the payment of a commercial license fee to Plaintiff, which fee was determined by the capacity of the establishment.

**Response:      Defendant is without sufficient information or knowledge to admit or deny this allegation.**

11. The Program was legally available to the Defendants for exhibition in their Establishment only after paying the commercial rate to Plaintiff. Defendants, however, chose not to contract with Plaintiff and pay the proper commercial license fee to Plaintiff. Instead, Defendants, including their agents, servants, and/or employees, took affirmative steps to circumvent the commercial licensing requirement and unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream.

**Response:      Defendant is without sufficient information or knowledge to admit or deny all the ways the Program was legally available, whether to the Defendants or otherwise. Defendant denies the "Establishment" is "their," i.e. both defendants' "Establishment." Defendant denies all other allegations as they are directed at her.**

12. In an effort to avoid paying the proper commercial license fees to Plaintiff, commercial locations, among other methods, obtained the Program through the illegal misuse of cable and satellite service by: (1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver

4

from a residence to their business, and/or (4) obtaining the Program in violation of the terms of their television service provider agreement.

**Response:     Defendant is without sufficient information or knowledge to admit or deny this allegation.**

13.     In addition to the above, commercial locations also exploited restricted online access to the Program in order to avoid paying the proper commercial license fees to Plaintiff. Individual consumers could stream the Program through a limited number of legitimate online distributors for a maximum retail price of $99.99, but only for *non-commercial use*. The website of each distributor carried clear language limiting use of an online stream to residential, personal, and/or non-commercial use only. Undeterred, commercial locations would purchase the Program for viewing on a personal device or in a residence, then proceed to link this device to the establishment's television screen(s) to unlawfully exhibit the Program commercially.

**Response:     Defendant admits that the Program was available to her for the non-commercial display she undertook through Showtime Networks, Inc. Otherwise, Defendant is without sufficient information or knowledge to admit or deny this allegation.**

14.     Upon information and belief, Defendants willfully engaged in one or more of the above illegal acts to receive the Program for free or at a nominal cost while Plaintiff's legitimate customers paid several thousand dollars. Defendants knew, or should have known, their receipt and exhibition of the Program at their establishment was not authorized.

**Response:     Deny, including all implications by use of "their," as explained above.**

15.     Upon information and belief, Defendants intentionally pirated the Program for the sole purpose of their own economic gain. Defendants exhibited the Program for the commercial purpose of attracting paying customers, patrons, members, and guests, thereby wrongfully benefiting financially by infringing Plaintiff's rights in the high-profile event.

5

**Response:      Deny.**

16.     Defendants did not have license, authorization, permission, or consent from Plaintiff to exhibit the Program in the Establishment.

**Response:      Defendant is without sufficient information or knowledge to admit or deny this allegation.**

17.     As exclusive licensee and copyright assignee of the Program, Plaintiff has standing and capacity to bring this action in its own name against Defendants for violations of the Communications and Copyright Acts.

**Response:      Defendant is without sufficient information or knowledge to admit or deny this allegation insofar as it claims Plaintiff is "exclusive licensee and copyright assignee." Defendant notes one cannot be both an "exclusive licensee and copyright assignee" as an assignee is an owner, therefore Plaintiff asserts it is  owner and its own licensee. Thus, upon information and belief, one of the assertions should be denied. Otherwise, deny.**

## COUNT I
## SATELLITE [47 U.S.C. § 605] AND CABLE [47 U.S.C. § 553] PIRACY

18.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

**Response:      Defendant reasserts and restates its responses set forth above.**

19.     Upon information and belief, Defendants' exhibition of the Program was accomplished through the interception and receipt of a cable and/or interstate satellite signal.

**Response:      Deny.**

20.     Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate (in the alternative to the extent necessary) 47 U.S.C. §§ 605 and/or 553.

6

**Response: Defendant is without sufficient information or knowledge to admit or deny this allegation.**

21.     Accordingly, Plaintiff is entitled to judgment in its favor and against each Defendant for statutory damages, in the discretion of this Court, plus interest, costs and attorneys' fees, pursuant to 47 U.S.C. §§ 605 and/or 553.

**Response:     Deny.**

## COUNT II
## COPYRIGHT INFRINGMENT

22.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

**Response:     Defendant reasserts and restates its responses set forth above.**

23.     Defendants' unauthorized distribution and public performance of the Program through any means, including without limitation, cable, satellite, or internet stream, was in violation of 17 U.S.C. §§ 106 and 501.

**Response:     Deny.**

24.     Defendants' acts of infringement were not only willful, intentional, and purposeful, but also in complete disregard of and indifference to Plaintiff's rights.

**Response:     Deny.**

25.     Accordingly, Plaintiff is entitled to judgment in its favor and against each Defendant for statutory damages, in the discretion of this Court, plus interest, costs and attorneys' fees, pursuant to 17 U.S.C. § 505.

**Response:     Deny.**

7

<h1 style="text-align:center">AFFIRMATIVE DEFENSES</h1>

First Affirmative Defense<br>Statute of limitations

1. Plaintiff filed this action on the third anniversary of the complained of broadcast.

2. Its signal piracy claims are barred by the statute of limitations.

Second Affirmative Defense<br>"Internet defense"

3. The Complaint acknowledges that the complained of program can be accessed through the internet.

4. The Plaintiff ignored this possibility and alleges "upon information and belief" that either cable or satellite piracy occurred.

5. Display through an internet signal is not cable or satellite piracy.

6. Use of the internet to display the complained of program does not constitute signal piracy.

7. The Program was displayed through the internet.

Third Affirmative Defense<br>Lack of standing

8. Plaintiff contends that it has the exclusive right to commercially distribute the audiovisual presentation of the complained of program.

9. Plaintiff also contends it is an assignee of a copyright.

10. Both cannot be true.

11. Upon information and belief, Fathom Events also had the right to distribute at least one of the programs commercially.

12. Upon information and belief, others were authorized to distribute the program through the internet.

13. Showtime Networks Inc. filed a lawsuit in the United States District Court for the Central District of California, sounding in copyright infringement, on or about August 15, 2017.

8

14. That case number was 2:17-cv-6041 and it was filed against John Doe owners of websites.

15. Paragraph 13 of that Complaint (ECF document 1 on that docket, publicly available in its official form to Plaintiff) states "Plaintiffs [Showtime Networks Inc.] owns and controls the exclusive rights to, among other rights, reproduce and transmit the Coverage within the United States and Canada."

16. "Coverage" was defined as "The live transmission and/or performance of the Fight and the preceding undercard bouts."

17. Based on the foregoing, upon information and belief, Plaintiff does not hold the exclusive rights to commercial distribution it claims.

18. Based on the foregoing, upon information and belief, Plaintiff does not hold the exclusive rights to distribute through the internet.

19. Without the aforementioned exclusive rights, Plaintiff lacks standing to complain of signal piracy.

20. Bringing a copyright claim requires a plaintiff to have an assignment or hold exclusive rights to one of the enumerated rights contained in § 106 of the Copyright Act.

21. Copyright Office records show do not show Plaintiff as the copyright owner.

22. Upon information and belief, Plaintiff does not hold sufficient rights to provide standing to assert a copyright claim.

23. If the complained of programs were broadcast, then they were broadcast using internet signals.

24. Lacking an assignment or the exclusive right to distribute, the Plaintiff lacks standing to bring its copyright infringement claim.

25. Lacking rights to internet distribution, Plaintiff may lack standing to bring its other claims.

<u>Fourth Affirmative Defense</u>
<u>Failure to State a Cause of Action</u>

26. The facts set forth by the Plaintiff are insufficient to state a cause of action upon which relief can

9

be granted as they demonstrate the possibility of internet streaming and only allege "upon information and belief" that the broadcast occurred through satellite or television signal piracy.

<u>Fifth Affirmative Defense</u>
<u>One-satisfaction rule</u>

27. The one-satisfaction rule operates to prevent double recovery or overcompensation to a plaintiff for a single injury.

28. Here, the Plaintiff seeks relief under two signal piracy statutes, when their remedies are mutually exclusive.

29. Plaintiff cannot recover under both statutes.

30. Further, the harm complained of in the copyright claim stems from the same injury and the same purported rights.

31. The Copyright Act concerns itself with rights concerning public display.

32. As a matter of equity, Plaintiff should not be entitled to collect for the same injury under both the Copyright Act and signal piracy statutes.

33. Doing so would provide a windfall where each statute already provides other means, through multiplying damages, to otherwise discourage signal piracy or copyright infringement.

34. Plaintiff is not entitled to relief under both of the signal piracy statutes simultaneously.

35. Plaintiff is not entitled to relief under a signal piracy statute and a copyright statute.

<u>Seventh Affirmative Defense</u>
<u>Acquiescence</u>

36. Upon information and belief, Plaintiff knew or suspected the complained of program was to be displayed by the third-party(ies) at the address involved in this case at the time of the complained of program.

37. Upon information and belief, Plaintiff failed to notify those third-parties they lacked proper authorization to display the program.

10

38. Plaintiff did not make any efforts to stop the program from being publicly displayed at the complained of address.

39. Thus, Plaintiffs claims are barred by the doctrine of acquiescence.

<u>Eighth Affirmative Defense</u>
<u>Laches</u>

40. Plaintiff filed this action on the third anniversary of the complained of broadcast.

41. Memories have faded and evidence has become more difficult to collect since that time.

42. Its delay should bar Plaintiff from relief other than money damages, if any.

<u>Ninth Affirmative Defense</u>
<u>Estoppel</u>

43. Plaintiff filed this action on the third anniversary of the complained of broadcast.

44. After receiving a letter from another attorney claiming to represent Joe Hand Promotions, Inc., Defendant advised Joe Hand it believed it lacked sufficient rights to make the claims asserted.

45. Joe Hand Promotions, Inc. never provided sufficient evidence documenting its rights to assert the claims.

46. Defendant relied on Joe Hand Promotions, Inc.'s silence for years to continue on with her life and, to her detriment, has lost knowledge and memories about the exact situation because of the delay.

47. This will render it more difficult for Defendant to defend herself in this case.

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38, and any other applicable Rule or law, Defendant demands a trial by jury as to any issue triable by a jury.

Wherefore, Lisa Lesley requests this Court enter an Order:

A. Entering Judgment in her favor and against Joe Hand Promotions, Inc.;

B. Awarding her costs, expenses, and attorneys' fees expended in this matter; and

11

C. Any other relief the Court deems appropriate.

## COUNTERCLAIM

Lisa Lesley asserts this Counterclaim against Joe Hand Promotions, Inc.

### The Parties

1. Defendant/Counter-Plaintiff Lisa Lesley resides and does business in this judicial district.

2. Upon information and belief derived from its pleadings in this and other cases, Plaintiff/Counter-defendant, Joe Hand Promotions, Inc. is a Pennsylvania corporation doing business in this judicial district.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202. The counterclaims are so related to the claims asserted by Plaintiff in this action that they form part of the same case or controversy under Article III of the U.S. Constitution, and arise out of common facts, transactions, or occurrences as provided under Rules 13 and 20 of the Federal Rules of Civil Procedure.

4. This Court has personal jurisdiction over Plaintiff. Plaintiff availed itself of this Court's jurisdiction by bringing this action in this District.

5. Venue in this District is proper over the counterclaims pursuant to 28 U.S.C. § 1391.

### General Background for Counterclaim

6. Joe Hand Promotions, Inc. is a serial litigant that claims to hold certain rights to fighting-sports broadcasts.

7. PACER reports that Joe Hand Promotions, Inc. has been a plaintiff in over 3,000 cases in federal courts throughout the country.

8. Joe Hand Promotions, Inc. utilizes national counsel, Jekielek & Janis LLP attorney Ryan Janis, to send out settlement demands and direct litigation throughout the country.

12

9. Joe Hand Promotions, Inc. typically files boilerplate complaints with the same vague, non-particularized allegations, with only the names of defendants changing from complaint to complaint.

10. Upon information and belief, including meta data in filings and privilege logs in other Joe Hand Promotions, Inc. cases, Mr. Janis participates in the drafting of boilerplate complaints.

11. Those complaints acknowledge that internet streaming is a possible means of transmission of the programs.

12. Those complaints ignore that fact and allege "upon information and belief" that either satellite signals or cable signals were intercepted.

13. Despite often using investigators the complaints fail to allege which person actually displayed the programs.

14. Upon information and belief, Joe Hand Promotions has filed at least one suit where no investigator was physically present to determine whether a fight was broadcast.

15. For those suits, mentioned in ¶ 14 above, Joe Hand Promotions, Inc. has relied upon the investigation of Mr. Janis or his firm taking screenshots of social media pages to assert a program was broadcast.

16. Upon information and belief, based upon the inability to state who actually displayed the programs and the means of transmission, Joe Hand Promotions, Inc. files suits consisting of boilerplate allegations with insufficient factual investigation.

17. Upon information and belief, it does so to extract settlements from defendants and to create a secondary revenue stream separate from exercising its actual rights in programs, if any.

18. The Counter-plaintiff operates has been publicly accused of piracy and alleged willful behavior.

19. Signal piracy can be prosecuted as a criminal act.

20. So, Counter-defendant has accused the Counter-plaintiff of a criminal act.

13

21. The Counter-plaintiff has the right to have her name cleared, even if the Counter-defendant attempts to dismiss this case.

22. In Northern District of Texas case 3:2019-cv-00704, Joe Hand Promotions, Inc. unilaterally moved to dismiss.

23. The Magistrate Judge, on a motion to reconsider that order and judgment, issued a Report and Recommendation awarding fees to the prevailing defendant in that action.

24. Joe Hand Promotions, Inc. challenged that Report and Recommendation.

25. Joe Hand Promotions, Inc. did not prevail in their challenge.

26. That court determined "[Joe Hand Promotions'] conduct, not [d]efendants,' [] caused [d]efendants to incur attorney's fees and costs that could have been avoided but for the manner in which Plaintiff handled this litigation."

27. Being an Order in a case in which Joe Hand Promotions, Inc. is a party, it has this Order available to it.

28. Fees were provided only after lengthy motion practice as a result of Joe Hand Promotions motion to unilaterally dismiss the case.

29. Joe Hand Promotions, Inc. would not have been allowed to unilaterally dismiss the matter had a counterclaim been pending.

30. The Counter-plaintiff especially wishes to clear her name of these accusations.

31. The Counter-plaintiff also wishes to preserve the right to seek fees under § 505 of the Copyright Act.

32. With a pending counterclaim, this Court could dismiss Joe Hand Promotions, Inc.'s complaint, but would be required to allow the Counter-plaintiff to clear her name and continue the declaratory judgment action under Federal Rule of Civil Procedure 41(a)(2).

14

<u>Declaratory Judgment of Non-Infringement & Non-signal-piracy</u>

33. Counter-plaintiff incorporates by reference all foregoing allegations made in her affirmative defenses and counterclaims as if fully set forth herein.

34. There is an actual and justiciable controversy between the parties regarding Counter-plaintiff's purported infringement of Counter-defendant's supposed rights in programs and alleged signal piracy.

35. Counter-defendant, upon information and belief, lacks standing to make the copyright infringement accusations it has in this case.

36. Counter-plaintiff did not infringe on any copyright interest held by Counter-plaintiff.

37. Counter-plaintiff did not intercept, descramble, or otherwise "pirate" any satellite or cable signal.

38. Thus, Counter-plaintiffs did not commit signal piracy.

WHEREFORE, Lisa Lesley respectfully request that this Court enter judgment in her favor and against Joe Hand Promotions, Inc., providing as follows:

A. Declaring that Defendants/Counter-plaintiff is not liable for infringing Plaintiff/Counter-defendant's rights in any copyrights;

B. Declaring that Defendants/Counter-plaintiff did not commit signal piracy;

C. Awarding Defendants/Counter-plaintiff her costs and reasonable attorneys' fees incurred during this action; and

D. Any other relief this Court deems just.

## **DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38, and any other applicable Rule or law, Defendant demands a trial by jury as to any issue triable by a jury.

15

Respectfully submitted,
LISA LESLEY, by

/s/ Jonathan LA Phillips
Jonathan LA Phillips (IL 6302752)
Attorney at Law
4541 North Prospect Road
Suite 300A
Peoria Heights, Illinois 61616
Tel: (309) 643-9016
Email: jon@jlaplaw.com
Attorney for Defendants

**Certificate of Service**

Undersigned certifies and states that on September 28, 2020, he filed a copy of the foregoing document using the Court's CM/ECF system. Under L.R. 5.2(d), this constitutes service on all those who are registered with the Court's CM/ECF, which is all counsel of record in this matter, namely:

Brian Yoakum, Esq.
Evans Petree PC
1715 Aaron Brenner Drive
Suite 800
Memphis, Tennessee 38120
byoakum@evanspetree.com

/s/ Jonathan LA Phillips
Jonathan LA Phillips
Attorney at Law
4541 North Prospect Road
Suite 300A
Peoria Heights, Illinois 61616
Tel: (309) 643-9016
Email: jon@jlaplaw.com
Attorney for Defendants

16