UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) |
|     *Plaintiff & Counter-Defendant*, | ) Case No. 3:20-cv-382 |
| v. | ) Judge Travis R. McDonough |
| | ) Magistrate Judge Debra C. Poplin |
| JAMES H. GRIFFITH, JR., d/b/a CJ'S SPORTS BAR, and LISA LESLEY | ) |
|     *Defendant & Counterclaimant*. | ) |

## MEMORANDUM OPINION

Before the Court is Defendants James H. Griffith, Jr., and Lisa Lesley's motion to dismiss Count I of the complaint filed by Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") (Doc. 15). For the reasons set forth below, the motion will be **GRANTED**.

### I. BACKGROUND[1]

Joe Hand is in the business of distributing and licensing premier sporting events for viewing in commercial establishments. (Doc. 1, at 2.) Joe Hand contracted with the promoters of a particular boxing match—*Floyd Mayweather Jr. v. Conor McGregor* on August 26, 2017 ("the Program")—to gain the exclusive right to commercially distribute the audiovisual presentation of the Program. (*Id.*) Joe Hand was assigned the right to distribute and authorize public performance of the Program by the Program's copyright owner. (*Id.*) Joe Hand licensed the Program to over 6,000 establishments, allowing those establishments to show the Program in exchange for the payment of a license fee. (*Id.* at 3.)

---

[1] The following allegations of the complaint are taken as true for the purpose of deciding Defendants' motion to dismiss. *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).

Defendant Griffith owns and operates CJ's Sports Bar ("CJ's"). (*Id.* at 2.) Defendant Lesley leased CJ's on the date of the Program and advertised that the Program would be shown at CJ's. (*Id.* at 3.) Defendants did not pay the license fee or otherwise obtain authorization to show the Program at CJ's. (*Id.*) Instead, Defendants obtained the Program through unauthorized means and showed it at CJ's. (*Id.* at 3–4.)

On August 26, 2020, Joe Hand filed this action against Defendants, asserting one claim for satellite and cable piracy (Count I) and one claim for copyright infringement (Count II). (*See id.* at 5–6.) Defendants have filed a motion to dismiss the satellite-and-cable-piracy claim as time-barred (Doc. 15), and their motion is ripe for adjudication.

## II.  STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. This assumption

of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

Joe Hand claims Defendants are liable for satellite piracy, in violation of 47 U.S.C. § 605, and cable piracy, in violation of 47 U.S.C. § 553. (Doc. 1, at 5.) Defendants argue that Joe Hand's piracy claim must be dismissed because it is time-barred. (Doc. 15, at 1.)

The parties agree that the federal satellite- and cable-piracy statutes lack statutes of limitations. (*See id.* at 2; Doc. 20, at 3.) The parties further agree that the Court should look, in the first instance, to the law of the forum state to borrow a statute of limitations from an analogous state law. (Doc. 15, at 2; Doc. 20, at 3.) The primary issue the Court must decide is which Tennessee statute is most analogous to the federal signal-piracy statutes that serve as the basis for Count I of the complaint. Defendants argue that the Court should borrow the two-year statute of limitations from Tennessee Code Annotated § 39-14-149 (Doc. 15, at 2), and Joe Hand

3

Case 3:20-cv-00382-TRM-DCP   Document 31   Filed 12/21/20   Page 3 of 8   PageID #: 144

argues that the Court should use the three-year statute of limitations applicable to Tennessee conversion claims. (Doc. 20, at 4.)

"Since 1830, state statutes have repeatedly supplied the periods of limitations for federal causes of action when the federal legislation made no provision, and in seeking the right state rule to apply, courts look to the state statute most closely analogous to the federal Act in need." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (citations and internal quotation marks omitted). The "longstanding" and "settled" practice is to treat analogous state law as the "lender of first resort" and analogous federal law as the "secondary lender." *Id.* (citations omitted). The preference for borrowing from state law should only be circumvented when applying the most analogous state statute of limitations would "frustrate or interfere with the implementation of national policies" or be "at odds with the purpose or operation of federal substantive law." *Id.* (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 161 (1983)). Thus, federal law will provide the appropriate statute of limitations "only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* at 35 (quoting *Reed v. Transp. Union*, 488 U.S. 319, 324 (1989)) (internal quotation marks omitted).

47 U.S.C. § 553 and 47 U.S.C. § 605 are part of the Federal Communications Act. Section 553 provides, in relevant part, that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). It provides both criminal penalties and a civil cause of action for noncompliance therewith. *See id.* § 553(b)–(c). Section 605 provides that "[n]o

4

person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." *Id.* § 605(a). Section 605 further proscribes persons who "having received any intercepted radio communication" from "divulg[ing] or publish[ing]" such communications.[2] *Id.* The statute, like § 553, provides both civil and criminal means of enforcement. *Id.* § 605(e).

The Sixth Circuit has not identified which Tennessee law is most analogous to 47 U.S.C. §§ 553 and 605, and only a few district courts have considered the issue. Most notably, the United States District Court for the Western District of Tennessee found that the three-year statute of limitations applicable to actions for conversion in Tennessee was most appropriate. *Kingvision Pay Per View, Ltd. v. Wilson*, 83 F. Supp. 2d 914, 919 (W.D. Tenn. 2000). Joe Hand urges the Court to follow the Western District and apply the three-year statute of limitations set forth in Tennessee Code Annotated § 28-3-105 for actions for the conversion of personal property. (*See* Doc. 20, at 4.) Importantly for this Court's analysis, however, *Kingvision* was decided prior to the enactment of Tennessee Code Annotated § 39-14-149, which Defendants urge is a more analogous statute.

Section 39-14-149 proscribes "communication theft," which is committed, as relevant here, when:

> (a) A person . . ., with the intent to defraud a communication service provider of any lawful compensation for providing a communication service, knowingly:
>
> (1) Acquires, transmits, or retransmits a communication service;
>
> (2) Makes, distributes, possesses with the intent to distribute or uses a communication device or modifies, programs or reprograms a communication device in such a manner that it is designed, adapted for

---

[2] Satellite communications, like radio and wire communications, are protected under § 605. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 912–13 (6th Cir. 2001).

> use or used for the commission of communication theft in violation of subdivision (a)(1);
>
> (3) Makes or maintains any modification or alteration to any communication device installed with the express authorization of a communication service provider for the purpose of intercepting any program or other service carried by the provider that the person is not authorized by the provider to receive;
>
> (4) Makes or maintains connections, whether physical, electrical, acoustical or by any other means, with cables, wires, components or other devices used for the distribution of communication services without the authority of the communication services provider; [or]
>
> . . .
>
> (7) Assists another in committing an act prohibited by this section in a manner that would make such person criminally responsible for the act under § 39-11-402.

Tenn. Code Ann. § 39-14-149(a).

Joe Hand argues that § 39-14-149 is not sufficiently analogous to the relevant Federal Communications Act sections, because it is broader than those statutes. (Doc. 20, at 3.) However, the cause of action for conversion is at least as broad, as it applies to a wide array of personal property and is not limited to communication services or devices. Joe Hand also urges the Court to find support for its position in *DISH Network L.L.C. v. Simmons*, No. 4:17-CV-53, 2018 WL 3647169 (E.D. Tenn. June 28, 2018), *report and recommendation adopted* 2018 WL 3623764 (E.D. Tenn. July 30, 2018). In *Simmons*, the United States Magistrate Judge recommended that the United States District Judge grant the plaintiff's motion for default judgment against the defendant who had failed to comply with court directives or otherwise answer or defend against the allegations in the complaint. *Id.* at *1. Among the claims for which the plaintiff sought a default judgment was a claim under § 605(e)(4) of the Federal Communications Act for distributing signal theft devices and equipment. *See id.* at *4. The magistrate judge found that the plaintiff's allegations were sufficient to support a claim under

§ 605(e)(4). *Id.* In recommending that the motion for default judgment be granted, the court cited *Kingvision* in support of the proposition that a three-year statute of limitations applied to Federal Communications Act claims. *Id.* at 3.

Joe Hand contends that the *Simmons* case should be persuasive to the Court in deciding Defendants' motion to dismiss. (Doc. 20, at 4.) It asserts that "had [the court in *Simmons*] determined the statute of limitations for Communications Act claims was two (2) years pursuant to Tenn. Code Ann. § 39-14-149, as Defendants contend, the [court in *Simmons*] had the ability to dismiss the plaintiff's claims *sua sponte* but did not." (*Id.*) However, the issue of which statute of limitations applies to claims under §§ 553 and 605 was not meaningfully presented to the court in that case. Accordingly, while the Court considers the decisions in *Kingvision* and *Simmons* persuasive to some extent, the Court nevertheless finds that the most analogous state law is found in Tennessee Code Annotated § 39-14-149.[3]

Section 39-14-149, like 47 U.S.C. §§ 553 and 605, provides for both civil and criminal penalties for the proscribed actions. While § 39-14-149 penalizes more actions within a single statute than §§ 553 and 605, it is targeted at preventing the same conduct as the conduct covered by those statutes. Specifically, both § 553 and § 39-14-149(a)(1) are aimed at preventing the interception of cable communications when such interception has not been approved by the provider of such communications. Section 39-14-149(a)(1) also forbids the retransmission of the

---

[3] Joe Hand also urges the Court that, if it is inclined to stray from *Kingvision* and *Simmons*, it should find that the Federal Copyright Act is the most analogous statute. (Doc. 20, at 5.) Joe Hand argues that the Court should follow other courts that have found that the Copyright Act provides a closer analogue than available state statutes, but none of the cases cited considered whether the Copyright Act was more analogous to the Communications Act than available *Tennessee* statutes. (*See id.*) Indeed, the only court to meaningfully do so, the Western District of Tennessee in *Kingvision*, found that there was a more analogous state statute. The question for this Court remains, then, whether the conversion statute identified in *Kingvision* is still the most analogous after the passing of Tennessee Code Annotated § 39-14-149.

intercepted communications, just as § 605 bans divulging or publishing intercepted communications. Conversion, on the other hand, can apply to any personal property taken in any manner. *See Barger v. Webb*, 391 S.W.2d 664, 665 (1965) (defining conversion as "the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right"). The Court thus finds that Tennessee Code Annotated § 39-14-149 is more closely tailored to scope and goals of 47 U.S.C. §§ 553 and 603. Accordingly, the two-year statute of limitations applicable to actions under § 39-14-149 applies to Joe Hand's claims under §§ 553 and 605. Because Joe Hand did not bring its Communications Act claims within the relevant two-year period, they are untimely and will be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss (Doc. 15). Count I of Joe Hand's complaint is hereby **DISMISSED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**