UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOE HAND PROMOTIONS, INC.,           )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        No. 3:20-CV-382-TRM-JEM
                                     )
JAMES H. GRIFFITH, JR., and LISA LESLEY,  )
                                     )
            Defendants.              )

## REPORT AND RECOMMENDATION

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and the

Referral Order [Doc. 61] of the Chief District Judge.[1]

Now before the Court is Defendants' Motion for an Award of Full Costs, Including

Attorney's Fees, Under § 505 of the Copyright Act [Doc. 56].  Plaintiff has responded in opposition

[Doc. 62], and Defendants have replied [Doc. 64].  The motion is ripe for adjudication.  For the

reasons set forth below, the Court **RECOMMENDS** that the Chief District Judge **DENY**

Defendants' motion [**Doc. 56**].

## I.    BACKGROUND

Plaintiff filed the Complaint in this matter on August 26, 2020, alleging that Defendants

violated the Satellite and Cable Piracy Acts, 47 U.S.C. § 605 and § 553, respectively, and the

Copyright Act, 17 U.S.C. §§ 106 and 501 [Doc. 1 ¶¶ 18–25].  Plaintiff specializes in distributing

and licensing premier sporting events to commercial and non-residential establishments, and it

alleged that it was granted an exclusive right to commercially distribute the audiovisual

---

[1]      The Referral Order [Doc. 61] refers this matter to United States Magistrate Judge H. Bruce
Guyton.  Judge Guyton, however, retired on January 28, 2022.  Pursuant to Standing Order 22-02,
the Chief District Judge reassigned all of Judge Guyton's pending matters to the undersigned.

presentation of the *Floyd Mayweather, Jr. vs. Conor McGregor* boxing match (the "Event") [*Id*. ¶¶ 4–5]. Plaintiff alleged commercial locations obtained the Event through the illegal misuse of cable and satellite service by: (1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver from a residence to their business, and/or (4) obtaining the Event in violation of the terms of their television service provider agreement [*Id.* ¶ 12].

In addition to these methods, Plaintiff alleged that commercial locations also exploited restrictive online access to the Event to avoid paying the proper commercial license fees to Plaintiff [*Id.* ¶ 13]. According to Plaintiff, individual customers could stream the Event through a limited number of legitimate online distributors for a maximum retail price of $99.99, but only for non-commercial use [*Id.*]. Commercial locations purchased the Event for viewing on a personal device or in a residence, but then, proceeded to link this device to the establishment's television screen(s) to unlawfully exhibit the Event commercially [*Id.*].

Defendant James H. Griffith, Jr., owned and operated CJ's Sports Bar located in Kingsport, Tennessee, (the "Establishment") during the relevant time period, and Defendant Lisa Lesley leased the Establishment during the relevant time period [*Id*. ¶¶ 8, 9]. Plaintiff alleged that Defendants willfully engaged in one or more of the above illegal acts to receive the Event for free or at a nominal price [*Id.* ¶ 14].

Defendants moved to dismiss Count I of the Complaint arguing it was time-barred [Doc. 15]. The Chief District Judge granted Defendants' motion to dismiss Count I, finding that it was time-barred [Doc. 31].

Defendants also filed a counterclaim for declaratory judgment for non-infringement and non-signal piracy [Docs. 16 & 17]. Plaintiff moved to dismiss Defendants' counterclaims

[Docs. 23 & 24], and the Chief District Judge granted these motion reasoning that "[t]he factual core of the declaratory-judgment counterclaims [was] the same as that alleged in the underlying complaint" [Doc. 32 p. 4].  In response to Plaintiff's motions, Defendants argued, in part, that the counterclaims were necessary to preserve their right to fees under the Copyright Act [Doc. 26 pp. 2–3].  The Court found, however, that the Sixth Circuit had "squarely rejected the fee-shifting arg[u]ment: 'the fee-shifting provision of the Copyright Act, 17 U.S.C. § 505, awards reasonable attorney's fees to the prevailing party in a copyright infringement action without regard to whether the defendant has asserted a counterclaim'" [Doc. 32 p. 4 (quoting *Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 407 (6th Cir. 2017)].  The Court further explained, "Defendants' right to fees can be protected if [Plaintiff] attempts to circumvent 17 U.S.C. § 505" by filing a voluntary dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure given that the Court may impose conditions on such a dismissal [*Id.* at 5].

Subsequently, Plaintiff moved for partial summary judgment [Doc. 39], and Defendants moved for summary judgment [Doc. 41].  Plaintiff sought a finding that Defendants willfully infringed on Plaintiff's rights under the Copyright Act, and Defendants asserted that summary judgment should be entered in their favor on the Copyright Act claim.  In its ruling on the motions for summary judgment, the Court found that Showtime, Inc. ("Showtime") owned the copyright to the Event when it was broadcasted live on August 26, 2017 [Doc. 54 p. 2].  Nearly three months after the Event, Showtime and Plaintiff entered into an agreement ("Agreement"), which purportedly granted Plaintiff the "sole and exclusive Commercial Rights" in the Event [*Id.*].

The Court agreed with Defendants that when the Event was displayed at the Establishment, Plaintiff did not own the copyright [*Id.* at 5].  Pursuant to 17 U.S.C. § 501(b), the Court noted that only the owner of the exclusive right under a copyright is entitled to file a lawsuit for infringement

that is "committed while he or she is the owner of it" [*Id.* at 7 (citation omitted)]. The Court

reasoned that the relevant question under the statute was whether Plaintiff owned the copyright at

the time of the Event [*Id.*]. While the Agreement used the word "live," which indicated that it was

meant to apply on August 26, 2017, such language circumvented the Copyright Act, which does

not allow copyright holders to contract their rights to sue to third parties [*Id.* at 8 (citing *ABKCO*

*Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991))]. The Court explained:

> The Agreement between Joe Hand and Showtime purportedly grants
> an exclusive right— the exclusive right to perform the broadcast live
> on the date of the Event. It further grants the right to initiate
> enforcement actions for the violation of the exclusive right. Lesley
> and Griffith, however, identify a troublesome wrinkle: the
> Agreement was not executed until November 2017, three months
> after the Event.

[*Id.* at 8–9 (citation omitted)]. The Court concluded that because "the Agreement was executed

months after the Event," it was simply "a disguised assignment of the right to sue" [*Id*. at 9]. Based

on the above, the Court entered Judgment [Doc. 55], dismissing the case with prejudice.

Defendants now move [Doc. 56] for an award of attorney's fees in the amount of

$34,750.00 [*see* Doc. 64-2 ¶ 6] and $7.10 in costs [*see* Doc. 56-1 ¶ 33] pursuant to 17 U.S.C.

§ 505, Rule 54(d)(2) of the Federal Rules of Civil Procedure, and Local Rule 54.2. Plaintiff objects

[Doc. 62], and Defendants filed a reply [Doc. 64].

## II.    ANALYSIS

The parties do not dispute that Defendants are the prevailing parties in this case and that

§ 505 governs Defendants' request. Section 505 provides that "the court in its discretion may

allow the recovery of full costs by or against any party" in an action for copyright infringement.

17 U.S.C. § 505. The recoverable costs awarded under § 505 are only those specified in 28 U.S.C.

§§ 1821 and 1920. *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 876 (2019). The costs

may also include a reasonable attorney's fee, 17 U.S.C. § 505, and in determining whether to award a reasonable attorney's fee, the Court must exercise its discretion using the factors outlined in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527–34 (1994) (the "*Fogerty* factors"). For the reasons explained below, the Court recommends that Defendants not be awarded the costs of this action, including their attorney's fees. The Court therefore **RECOMMENDS** Defendants' motion [**Doc. 56**] be **DENIED**.[2]

### A. Costs

Defendants seek costs in the amount of $7.10 for the certified postage for the subpoena issued to Showtime [Doc. 56-1 ¶ 33]. The parties did not brief whether this cost is permissible under the statute. In any event, "[i]n copyright cases, § 505's authorization for the award of 'full costs' . . . covers only the six categories specified in the general costs statute, codified at [28 U.S.C.] §§ 1821 and 1920." *Rimini St.*, 139 S. Ct. at 876.[3] The Court has reviewed the six categories specified in §§ 1821 and 1920 and postage is not included. Without any argument establishing otherwise, the Court declines to recommend that Defendants be awarded such costs. *Barnes v. Lantech.com, LLC*, No. 3:18-CV-507-BJB-LLK, 2021 WL 5456990, at *2 (W.D. Ky. Nov. 22, 2021) (stating that district courts in this circuit have repeatedly declined to tax shipping and handling costs and collecting cases).

---

[2]      Defendants filed a supplemental brief to notify the Court that Plaintiff filed an appeal to the Sixth Circuit Court of Appeals [Doc. 59 p. 1]. Defendants submit that the notice of appeal does not divest the Court of jurisdiction over attorney's fees. The Court agrees. *Jankovich v. Bowen*, 868 F.2d 867, 871 (6th Cir. 1989) ("Thus, federal courts repeatedly have held that the filing of a notice of appeal in the underlying action does not affect the district court's jurisdiction to consider a post-judgment motion for attorney[']s fees.").

[3]      While the Court has considered Defendants' request for costs, they did not file a bill of costs as required. 28 U.S.C. § 1920 ("A bill of costs shall be filed in the case."); *see also* E.D. Tenn. L.R. 54.1 (explaining that a bill of costs shall be filed by the prevailing party).

5

Case 3:20-cv-00382-TRM-JEM   Document 66   Filed 06/21/22   Page 5 of 17   PageID #: 727

### B.  Attorney's Fees

While the Court has discretion to award attorney's fees, the Court must be mindful of certain limitations.  First, as the Supreme Court has explained, "Prevailing plaintiffs and prevailing defendants are to be treated alike."  *Fogerty*, 510 U.S. at 534.  Second, a court "may not award[] attorney's fees as a matter of course."  *Id.* at 533; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (reiterating *Fogerty's* conclusion that attorney's fees cannot be awarded "as a matter of course" and that a "court must make a more particularized, case-by-case assessment" (citation omitted)).  Third, a court's discretion must be exercised in a manner consistent with the primary purposes of the Copyright Act, which are to "'enrich the general public through access to creative works,' by striking a balance between encouraging and rewarding authors' creations and enabling others to build on that work."  *Kirtsaeng*, 579 U.S. at 198 (quoting *Fogerty*, 510 U.S. at 527).

"[While] there is no precise rule or formula for making fee determinations, *see Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983), under § 505, courts may weigh the *Fogerty* factors:

> (1) frivolousness, (2) motivation, (3) objective unreasonableness (both in the factual and in the legal components of the case), and (4) the need in particular circumstances to advance considerations of compensation and deterrence.

*Fogerty*, 510 U.S. at 534 n.19 (quoting *Lieb v. Topstone Indust. Inc.*, 788 F.2d 151, 156 (1986)).  "The factors need not all weigh in favor of an award in order to grant fees to a prevailing party and other factors may be considered."  *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citation omitted).  The court may give factor three (objective unreasonableness) substantial weight but must take into account all other relevant factors.  *Kirtsaeng*, 579 U.S. at 210.

6

Defendants assert that "fee awards under § 505 are the 'rule rather than the exception and they should be awarded routinely'" [Doc. 56 p. 8 (quoting *Bridgeport Music*, 520 F.3d at 592)]. Plaintiff disputes Defendants' position, asserting that the Middle District of Tennessee recently rejected Defendants' argument [Doc. 62 pp. 3–4 (citing *Parker v. Winwood*, No. 3:16-CV-00684, 2021 WL 981551, at *4 (M.D. Tenn. Mar. 16, 2021), *report and recommendation adopted sub nom. Parker v. Davis*, No. 3:16-CV-00684, 2021 WL 1222773 (M.D. Tenn. Apr. 1, 2021))]. Defendants are correct that, under current Sixth Circuit law, a grant of attorney's fees under the Copyright Act is "the rule rather than the exception" and "should be awarded routinely." *Bridgeport Music*, 520 F.3d at 592. The Court also considers more recent Supreme Court precedent, in which the Supreme Court said that a court "may not award attorney's fees as a matter of course; rather, [it] must make a more particularized, case-by-case assessment." *Kirtsaeng*, 579 U.S. at 202 (citation omitted). The Court therefore considers the principals discussed above and weighs the *Fogerty* factors. *See Timothy B. O'Brien LLC v. Knott*, 962 F.3d 348, 352 (7th Cir. 2020) (finding that the presumption to award prevailing defendants their attorney's fees is consistent with *Kirtsaeng* to ensure businesses are not dissuaded from defending their rights, but noting that the presumption can be overcome). After weighing the *Fogerty* factors, the Court finds that an award of attorney's fees is not appropriate and would not further the goals of the Copyright Act.

### 1. Frivolousness and Objective Unreasonableness

The parties discuss the reasonableness and frivolousness factors contemporaneously, so the Court will follow suit. *Bliss Collection, LLC v. Latham Companies, LLC*, No. 5:20-CV-217-CHB, 2022 WL 1154600, at *5 (E.D. Ky. Apr. 19, 2022) ("The 'reasonableness' and 'frivolousness' factors overlap conceptually, so the Court will consider them together."), *appeal docketed*, No. 22-

5361 (6th Cir. April 28, 2022); *CoreClarity, Inc. v. Gallup, Inc.*, No. 4:20-CV-00601, 2020 WL 6741962, at \*2 (E.D. Tex. Nov. 17, 2020) ("Frivolousness and objective reasonableness are often considered together by district courts.")

Defendants assert that when Plaintiff filed this case, it had been aware for years that (1) it entered into an agreement with Showtime after the live broadcast of the Event had occurred, (2) Showtime is the copyright registration owner, and (3) Defendant Lesley displayed the Event through the internet as ordered from Showtime. They also assert that, while Plaintiff filed the same boilerplate complaint that it has filed hundreds of other times, in this case, Plaintiff knew that it was missing an essential element of the cause of action—that is, ownership of the copyright at the time that the Event was broadcasted.

Plaintiff denies its claim was objectively unreasonable and frivolous. According to Plaintiff, Defendants prevailed in this matter solely because of the Court's interpretation of a contract between Plaintiff and Showtime. Yet, prior to the Court's ruling, Plaintiff notes that every court that analyzed the same contract in similar lawsuits affirmatively found that Plaintiff had standing to bring its claims under the Copyright Act, citing *Joe Hand Promotions, Inc. v. Barber*, No. 1:18-CV-1015-WKW-SMD, 2021 WL 2497940 (M.D. Ala. May 19, 2021), *report and recommendation adopted*, No. 1:18-CV-1015-WKW, 2021 WL 2581416 (M.D. Ala. June 23, 2021); *Joe Hand Promotions, Inc. v. Bella's Bar & Grill LLC*, No. 1:19-CV-00140, 2020 WL 6585717, at \*1 (S.D. Tex. Nov. 9, 2020); and *Joe Hand Promotions, Inc. v. Dilone*, No. 19CV871NGGRML, 2020 WL 1242757, at \*1 (E.D.N.Y. Mar. 16, 2020).

As mentioned above, the Chief District Judge granted summary judgment in favor of Defendants, finding that Plaintiff was not the copyright owner at the time Defendants broadcasted the Event in August 2017. The Court found that the Agreement was executed months after the

Event and was simply "a disguised assignment of the right to sue" [Doc. 54 p. 9 (citation omitted)]. The Court further explained that the Sixth Circuit had not directly addressed whether copyright holders may choose third parties to bring suits on their behalf, but the Second and Ninth Circuits had considered the issue and held that right to sue conveyances were insufficient to convey standing for copyright infringement [*Id.* at 8 (citing *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394 (2d Cir. 2018); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005))]. The Chief District Judge acknowledged that such a holding was a "disfavored outcome under Tennessee principles of contract interpretation," but that allowing Plaintiff "to maintain this suit would ignore the plain language of the Copyright Act" [*Id.* at 10].

Defendants maintain in their reply that Plaintiff's claim was frivolous and unreasonable and argue that Plaintiff's reliance on the cases cited in its brief wherein courts have decided that a copyright holder may transfer its right to sue under similar circumstances is misplaced. The Court disagrees.[4]

For instance, Defendants argue that Plaintiff's reliance on *Dilone* is misplaced because it involved a defaulting defendant and that "[w]ith no challenge[,] the opinion carries little weight" [Doc. 64 p. 4]. In *Dilone*, the court adopted a magistrate judge's report and recommendation that default judgment be entered against a defendant who failed to appear and respond to Joe Hand Promotions, Inc.'s lawsuit. 2020 WL 1242757, at *1. In making the recommendation, the magistrate judge addressed whether the plaintiff had standing to sue under the Copyright Act, noting the Second Circuit's decision that "an assignee of the bare right to sue" is not the owner of a copyright. *Id.* at *3 n.2 (citing *John Wiley & Sons*, 882 F.3d at 398–99, 410). The magistrate

---

[4]     The Court agrees with Defendants, however, that Plaintiff's reliance on *Bella's Bar & Grill*, 2020 WL 6585717, at *1, is not persuasive because the court there did not address whether plaintiff had standing to sue for copyright infringement.

judge concluded that, "[b]ecause the [a]greement, by its express terms, only authorizes plaintiff to sue for infringement that occurred on a single date prior to its execution, I find that it expressly includes accrued causes of action." *Id.* The Agreement in this case between Plaintiff and Showtime contains language similar to the language that the magistrate judge in *Dilone* relied on to conclude that the plaintiff could prosecute the copyright infringement despite not being the owner at the time of the Event [*See* Doc. 40-2 p. 46].

Similarly, in *Barber*, another case involving Joe Hand Promotions, Inc., a magistrate judge recommended that the defendant's motion to dismiss for lack of standing be denied. 540 F. Supp. 3d 1070, 1074 (M.D. Ala. 2021), *report and recommendation adopted*, No. 1:18-CV-1015-WKW, 2021 WL 2581416 (M.D. Ala. June 23, 2021). The defendant argued that the plaintiff and Showtime entered into the agreement three months after the Event broadcasted and that the agreement did not grant the right to initiate legal proceedings for violations occurred before the date of execution. *Id.* at 1077. The court acknowledged, "While the general rule is that mere assignment of a copyright does not transfer any cause of action for infringement that occurred prior to the date of assignment, this presumption may be overcome by express language in the assignment instruction." *Id.* The court found that the agreement between the plaintiff and Showtime granted the plaintiff "retroactive ownership of the exclusive right to publicly perform the fight telecast," and that while the agreement was executed after the live broadcast of the Event, the agreement provided a retroactive transfer of Showtime's rights. *Id.* at 1077–78. It concluded, "Showtime's clear purpose in making this retroactive grant is to allow [plaintiff] to prosecute infringement actions against commercial establishments that publicly showed the fight live on August 26, 2017, without authorization." *Id*. at 1078.[5]

---

[5]     The Court notes that the Chief District Judge cited to *Barber* in the Order [Doc. 65] denying Defendants' request for an appeal bond, stating that courts are "split on the question of whether

The undersigned has considered the parties' positions and the Memorandum Opinion granting summary judgment in favor of Defendants [Doc. 54]. The Court does not find that Plaintiff's copyright infringement claim was frivolous or objectively unreasonable. As the Chief District Judge noted, the Sixth Circuit has not determined whether a copyright holder may transfer its right to sue. The undersigned also observes that in denying Defendants' motion for an appeal bond, the Chief District Judge found that Plaintiff's appeal of this case is not frivolous "as courts have split on the question of whether the contract at issue conveys an exclusive right under the Copyright Act" [Doc. 65 p. 2 (citing *Barber*, 2021 WL 2581416)]. The undersigned agrees. *See Philpot v. L.M. Commc'ns II of S.C., Inc.*, No. 5:17-CV-173-CHB, 2020 WL 2513820, at *2 (E.D. Ky. May 15, 2020) ("A litigation position does not have to prevail to be objectively reasonable, it just requires a reasonable basis in fact and law."). *Cf. Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002) (stating that plaintiffs' claims were objectively unreasonable because the legal issues were clear and no case law from any circuit supported the plaintiffs' position).

Defendants also assert that objective unreasonableness can involve conduct during the litigation, citing to *Murphy v. Lazarev*, No. 3:10-CV-0530, 2015 WL 1868496, at *1 (M.D. Tenn. Apr. 23, 2015), *aff'd*, 653 F. App'x 377 (6th Cir. 2016). In *Murphy*, however, the court found that the plaintiffs pursued multiple meritless positions and prolonged the ligation in various ways. *Id.* at *9–10. The conduct in this case does not measure up to the conduct that occurred in *Murphy*. *See id.* at *9 ("[P]laintiffs never settled on a coherent legal theory of liability against [defendant]. From their Complaint through judgment in the case, they lurched from one theory of liability to another, none of which was consistent with the factual record, and many of which were frivolous."). At most here, Defendants argue that Plaintiff conducted minimal written discovery,

---

the contract at issue conveys an exclusive right under the Copyright Act" [*Id*. at 2 (citation omitted)].

did not take any depositions or seek third-party discovery from Showtime, failed to investigate the facts thoroughly, failed to disclose documents, submitted its witness list late, and attempted to rely on objectionable documents in its motion for partial summary judgment. Conducting little discovery in a case does not necessarily warrant a finding that a party acted unreasonable. *Cf. Capitol Recs., LLC v. ReDigi Inc.*, No. 1:12-CV-95 (RJS), 2022 WL 1046463, at *7 (S.D.N.Y. Apr. 7, 2022) (finding defendants' litigation conduct warranted an award of attorney's fees to plaintiff where defendants served needless discovery and engaged in fishing expeditions to delay litigation).

The Court finds Defendants' remaining allegations insufficient to find Plaintiff engaged in unreasonable conduct. Given that the Chief District Judge granted Defendants' motion for summary judgment, he did not rule on these Defendants' challenges [Doc. 54]. In any event, Defendants state that Plaintiff untimely filed its witness list, but Plaintiff's untimely filing was the result of a scheduling order, and the parties scheduled a meet and confer to discuss this issue, which never occurred because defense counsel did not call Plaintiff's counsel [Doc. 53 p. 2; Doc. 53-1 pp. 1–4]. With respect to the alleged failure to disclose documents, Defendants argued that Plaintiff did not disclose the subject matter of a witness's declaration and the documents the witness referenced therein [Doc. 48 pp. 6–10]. Plaintiff disputed Defendants' objection and argued that it disclosed the witness and the subject matter of his knowledge in its initial disclosures [Doc. 53 pp. 3–4]. In addition, Plaintiff argued that a hearsay exception applied to the documents it relied on in support of its motion for summary judgment and that they were public records [*Id.* at 4–8]. The Court does not find these allegations support a finding that Plaintiff engaged in unreasonable conduct. Instead, it appears that the parties argued genuine discovery and evidentiary disputes that are typical in many cases.

Accordingly, for these reasons, the Court finds that the frivolousness and the objectively unreasonableness factors weigh in favor of denying Defendants' request for attorney's fees.

## 2. Motivation

Defendants assert that Plaintiff's motivation in filing this lawsuit did not comport with the goals of the Copyright Act and that Plaintiff filed this lawsuit to extract a settlement. To explain, Defendants point to what they call a boilerplate complaint, which was one of over 4,000 complaints filed immediately before the expiration of the statute of limitations, Plaintiff doing as little work as possible to keep the case moving along, and Plaintiff's settlement demand, which they state was five times its licensing fees and was non-negotiable. Defendants further assert that even if the Court determines that Plaintiff's motive was not to extract a settlement, Plaintiff only secured rights to the live broadcast after the broadcast took place, meaning that its rights were a "mirage" [Doc. 56 p. 12]. According to Defendants, Plaintiff is not interested in advancing the protection of creative works, but instead, interested in collecting money.

Plaintiff counters that its motivation in bringing this lawsuit is proper. Plaintiff argues that it filed suit to protect its rights and to recover lost commercial licensing fees as well as statutory damages. It denies any allegation that it is a serial litigator and claims that it attempted to settle with Defendants before filing suit.

Based on the record before it, the Court cannot conclude that Plaintiff pursued its claim with an improper purpose. Defendants contend that Plaintiff's settlement demand was five times its licensing fees and was non-negotiable, but "[i]n various instances, courts granting a copyright owner's motion for summary judgment have awarded statutory damages of three to five times the licensing fee." *Bella's Bar & Grill LLC*, 2020 WL 6585717, at *6 (collecting cases). And even if Plaintiff "did as little work as possible to keep kicking the case along," [Doc. 56 p. 11], that fact

13

does not show Plaintiff's motives did not comport with the Copyright Act. Defendants assert that Plaintiff filed a boilerplate complaint just before the statute of limitations expired, but they have not pointed to any authority stating that such actions do not comport with the Copyright Act.

Defendants also argue that Plaintiff did not file this lawsuit to protect its rights under the Copyright Act, calling Plaintiff's rights a "mirage" [Doc. 56 p. 12]. As explained above, however, several courts have disagreed with such arguments. *Barber*, 2021 WL 2581416, at *1; *Dilone*, 2020 WL 1242757, at *1; *see also T-Peg, Inc. v. Vermont Timber Works, Inc.*, No. 03-CV-462-SM, 2010 WL 3895715, at *3 (D.N.H. Sept. 30, 2010), *aff'd*, 669 F.3d 59 (1st Cir. 2012) ("Plaintiffs are entitled to protect their legitimate intellectual property interests, through litigation if necessary, particularly when the factual and legal premises establish the objective reasonableness of those claims, as they did here.").

As for Defendants' assertion that Plaintiff is not interested in advancing the protection of creative works, but instead, interested in collecting money, Defendants claim that in another case, *Joe Hand Promotions, Inc. v. Williams*, Plaintiff admitted that it may dismiss cases when costs of litigation outstrip its chance of an award. No. 3:19-CV-704-L, 2020 WL 3396422, at *1 (N.D. Tex. June 19, 2020) ("When the cost of litigation started to exceed any potential award, the Plaintiff chose to stop pursuing this claim because of its limited resources."). In *Williams*, however, plaintiff sought leave to voluntarily dismiss the lawsuit—an event which did not occur in this case. *Id.* at *2. Regardless, as the Supreme Court has noted, courts are required to engage in a "case-by-case assessment" in determining whether to award attorney's fees. *Kirtsaeng*, 579 U.S. at 202 (citation omitted).

In sum, the record does not suggest that Plaintiff litigated this case with any improper purposes.

### 3. Compensation and Deterrence

Defendants argue that compensation and deterrence weigh heavily in their favor. They assert that, throughout this litigation, they maintained that Defendant Lesley paid Showtime to display the Event, and since the outset, Defendants pointed out to Plaintiff that Plaintiff did not own the exclusive rights it claimed. Failing to award them fees, they submit, will encourage additional filing of frivolous lawsuits, especially given that Plaintiff has substantial means with which to demand outrageous settlements and pursue over 4,800 cases. They state that the Court should deter dragnet campaigns like this one.

Plaintiff counters that these two factors weigh against an award of attorney's fees to Defendants. Given that several courts have previously ruled that it had statutory standing based on the same assignment agreement at issue in this case, Plaintiff submits that "[t]his case demonstrates that the statutory standing under the Copyright Act is not always clear cut" [Doc. 62 p. 6]. Plaintiff further submits that an award of attorney's fees would not serve to deter frivolous lawsuits, but instead, serve to deter copyright holders from bringing claims involving unsettled issues, including statutory standing.

As for Defendants' assertion that throughout the litigation they maintained that Defendant Lesley paid Showtime to display the Event, the Court will not decide the underlying merits of this lawsuit. The undersigned observes, however, that even if Defendant Lesley paid Showtime to display the Event, this fact is not dispositive. For instance, in support of Defendants' motion for attorney's fees and costs, Defendants filed an email from defense counsel to Plaintiff's counsel explaining that Defendant Griffith was not involved with the broadcast and that Defendant Lesley simply rented a room at the Establishment to host family and friends for a private event [Doc. 56-2 p. 2]. But the record shows that the Establishment advertised the Event via Facebook and

presumably sold tickets [Doc. 40-3 p. 7], and the agreement with Showtime appears to be for "personal, non-commercial purposes" [*See* Doc. 40-3 at 25].

With respect to Defendants' position that failing to award them fees will encourage additional filing of frivolous lawsuits, Defendants accuse Plaintiff of filing "bare-bones recitals" [Doc. 56 p. 12] and argue that without the potential of fee awards, similar defendants may be forced into a settlement. They state that a "similar situation" occurred in *Ingenuity 13 LLC v. John Doe*, No. 2:12-CV-8333-ODW JCX, 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013) [Doc. 56 pp. 12–13]. In *Ingenuity 13*, plaintiffs were shell companies controlled by several principals, who were also attorneys, to shield them from potential lability and to give an appearance of legitimacy. *Id.* at *1–2. Plaintiffs' attorneys began a "copyright-enforcement crusade," wherein they monitored a pornographic website, recorded the IP addresses of the computers downloading copyrighted pornographic movies, and then sent settlement demands to those who downloaded the movies. *Id.* Most defendants settled, but for those who refused, the attorneys "engaged in vexatious litigation designed to coerce settlement," but with a determined defendant, the attorneys would dismiss the case. *Id*. The court noted that when pressed for discovery, the attorneys offered disinformation, even to the court, which included stealing an identity and fraudulently signing a copyright assignment. *Id*. at *2–3. Given the conduct in the case, the court sanctioned plaintiffs and referred the matter to the United States Attorney and the Criminal Investigation Division of the Internal Revenue Service. *Id*. at *5.

The Court does not find that this case presents a "similar situation" as that presented in *Ingenuity 13*. While Plaintiff filed similar complaints across the country relating to the Event [*see* Doc. 56-1 ¶ 5], this does not necessarily mean that the allegations are frivolous as Defendants have

argued.  Defendants have also otherwise failed to point to anything in this case that comes close to mirroring the facts of *Ingenuity 13*.

Overall, the parties' arguments under this factor largely echo the arguments already addressed.  As the Chief District Judge explained, Plaintiff's "appeal is not frivolous, as courts have split on the question of whether the contract at issue conveys an exclusive right under the Copyright Act" [Doc. 65 p. 2 (citation omitted)].  Accordingly, the Court does not find that an award of attorney's fees would advance the goals of the Copyright Act or deter the filing of frivolous lawsuits.

## III.    CONCLUSION

For all of the reasons explained above, the Court **RECOMMENDS**[6] that the District Judge **DENY** Defendants' Motion for an Award of Full Costs, Including Attorney's Fees, Under § 505 of the Copyright Act [**Doc. 56**].

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[6]    Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b).  Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).  "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)).  Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).