UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | Case No. 3:20-cv-382 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Jill E. McCook |
| JAMES H. GRIFFITH, Jr., d/b/a CJ'S ) | |
| SPORTS BAR, and LISA LESLEY ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court are Defendants James H. Griffith and Lisa Lesley's motion (Doc. 75) for the Court to reconsider its decision granting summary judgment and the Court's notice that it was considering granting summary judgment in favor of Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") as to Defendants' copyright-infringement liability (Doc. 71). For the reasons that follow, the Court will **GRANT** Griffith and Lesley's motion for reconsideration (Doc. 75), **GRANT IN PART** summary judgment in favor of Joe Hand as to Defendants' liability for copyright infringement, and **DENY IN PART** summary judgment on the issue of willfulness (Doc. 71). On reconsideration, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for sanctions (Doc. 48) and **DENY** Defendants' motion to exclude certain evidence (Doc. 47).

### I. BACKGROUND

#### A. Factual History

The dispute between Joe Hand, Lesley, and Griffith centers on the right to broadcast the Mayweather-McGregor boxing match ("the Fight"), which aired live on August 26, 2017. (Doc.

1, at 5.)  Showtime Networks Inc., ("Showtime") produced the Fight but did not register it as a copyrighted work until months after the Fight originally aired.  (Doc. 40-2, at 49.)  Prior to the Fight, Showtime contracted with Mayweather Promotions, LLC, ("Mayweather") to grant Mayweather the exclusive right "to exhibit and distribute, and authorize the exhibition and distribution of, the [Fight] . . . via the Internet."  (Doc. 40-5, at 9; Doc. 68, at 4.)

Mayweather and Joe Hand, a business that licenses sports and entertainment programming to commercial establishments, consequently entered into a Commercial Licensing Agreement that granted Joe Hand "the sole and exclusive third party license . . . to distribute . . . and authorize the public exhibition of the [Fight] . . . ."  (Doc. 40-2, at 31; Doc. 68, at 5.)  Joe Hand thereafter licensed the Fight to commercial establishments and based its rates upon the attendance or seating capacity of the commercial establishments sublicensing the Fight.  (Doc. 40-3, at 1; Doc. 68, at 5.)  For an establishment with a seating capacity of 101 to 150 persons, for instance, Joe Hand charged $5,200 to license the Fight.  (*Id.*)

On November 21, 2017, nearly three months after the Fight originally aired and less than a month after Showtime applied to register its copyright of the Fight, Showtime entered into an agreement ("Copyright Agreement") with Joe Hand.  (Doc. 40-2 at 46; Doc. 68, at 5.)  Mayweather also signed the Copyright Agreement, though it was not a party to the agreement.  (Doc. 40-2, at 48; Doc. 68, at 5.)  The Copyright Agreement granted Joe Hand "[t]he exclusive right to distribute and publicly perform the [Fight] live on August 26, 2017[,] to Commercial Premises in the Territory[,]" as well as the sole right to sue anyone who broadcasted the Fight without paying the required licensing fee.  (Doc. 40-2, at 46; Doc. 68, at 5.)

Defendant James Griffith owns CJ's Sports Bar ("Bar") in Kingsport, Tennessee, and Defendant Lisa Lesley works at the Bar.  (Doc. 40-2, at 3, 5.)  Lesley rented the Bar from

Griffith on the night of August 26, 2017, for $1,000 with the intention of using the space to livestream the Fight. (Doc. 40-2, at 3; Doc. 40-7, at 17, 49.) Prior to the Fight, the Bar uploaded multiple posts on its Facebook page promoting the Fight and encouraging ticket purchases. (Doc. 40-3, at 7–12.) In at least two posts, the Bar touted that it was "the ONLY place in Kingsport" showing the Fight. (*Id.* at 10, 12.) In one, it promised that patrons "won't get in for cheaper ANYWHERE else!" (*Id.* at 12.)

Lesley did not contact or do business with Joe Hand before streaming the Fight at the Bar. Instead, she purchased the program from Showtime's website for approximately $99 and had her daughter, Hannah Lesley, connect her laptop to a Bar television using an HDMI cable. (*Id.* at 18–20; Doc. 40-2, at 3, 5; Doc. 40-7, at 27.) According to Joe Hand, an on-screen piracy warning would have appeared at the start of the Fight broadcast. (Doc. 40, at 9–10.) Showtime's terms of use, which Lesley denies having read, may have also contained a statement about copyright infringement at the time. (*Id.*)

Each patron paid Lesley a six-dollar entry fee at the door. (Doc. 40-3, at 19.) Griffith received money from the food and beverages sold during the Fight but did not receive any of the door charge collected by Lesley and was not present at the Bar during the Fight. (Doc. 40-4, at 12; Doc. 40-2, at 5.) Attendance at the Bar during the Fight was, per Lesley, "about the same as any of the previous Saturday evenings at [the] Bar." (Doc. 40-2, at 3.)

B. **Procedural History**

On August 26, 2020, Joe Hand instituted the present action against Defendants for copyright infringement and internet piracy. (Doc. 1.) The Court previously dismissed Joe Hand's claim for internet piracy, (*see* Doc. 31); therefore, only a single count of copyright infringement remains. On August 30, 2021, Joe Hand filed a motion for partial summary

3
Case 3:20-cv-00382-TRM-JEM    Document 79    Filed 07/25/23    Page 3 of 19    PageID #: 801

judgment (Doc. 39), and Defendants filed a motion for summary judgment (Doc. 41). Alongside their summary-judgment motion, Defendants also moved to exclude certain evidence presented by Joe Hand. (*See* Docs. 47, 48.) The Court granted Defendants' summary-judgment motion and denied Joe Hand's motion for partial summary judgment, finding that Joe Hand did not own the copyright to the Fight on the day it aired, because the Copyright Agreement claimed to grant Joe Hand exclusive rights in the copyrighted work only retroactively; in other words, the Copyright Agreement conferred to Joe Hand a bare right to sue, which is insufficient to generate a cause of action under the Copyright Act. (Doc. 54, at 9.) Because the Court granted summary judgment in Defendants' favor, the Court did not address their pending evidentiary motions. The Sixth Circuit reversed this Court's judgment and remanded with instructions to grant Plaintiff's motion for partial summary judgment on the issue of copyright standing. (Doc. 68, at 12.) On April 3, 2023, Defendants petitioned the United States Supreme Court for a writ of certiorari. (Doc. 77, at 1.) The Supreme Court denied writ on June 12, 2023. (Doc. 78, at 1.)

Consistent with the Sixth Circuit's instructions, this Court granted Joe Hand's motion for partial summary judgment (Doc. 39) on the issue of copyright standing. (Doc. 71, at 1.) In that memorandum opinion, the Court also notified the parties that it was considering granting summary judgment in favor of Joe Hand as to Defendants' copyright-infringement liability. (*Id.*) Defendants responded to the order, arguing that the Court should not enter summary judgment (Doc. 74, at 1), and moved the Court to reconsider (Doc. 75) its decision not to address Defendants' related evidentiary challenges.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). Federal Rule of Civil Procedure 56(f)(3) permits a district court, after giving notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *See, e.g.*, *Shaw v. Donahoe*, 605 F. App'x 494, 500 (6th Cir. 2015) (upholding *sua sponte* grant of summary judgment under Rule 56(f)(3)). "A district court does not abuse its discretion in sua sponte granting summary judgment so long as the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court." *Id.* (alteration in original) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005)).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably

find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

#### A. Defendants' Motion to Reconsider (Doc. 75)

Defendants ask the Court to reconsider its order denying as moot their evidentiary objections and motion for sanctions against Joe Hand. (Doc. 75 (referencing Docs. 47, 48).) Because the Sixth Circuit reversed the Court's decision that rendered Defendants' evidentiary objections and motion for sanctions moot (*see* Doc. 68), the Court will **GRANT** Defendants' motion to reconsider them (Doc. 75). *See* Fed. R. Civ. P. 54(b) (enabling a court to revise any nonfinal order).

##### *i. Defendants' Motion for Sanctions (Doc. 48)*

Defendants seek exclusion of three documents—portions of attorney Ryan Janis's[1] declaration, Showtime's terms of use, and the piracy warning that preceded the Fight—as sanctions for Joe Hand's alleged failure to timely disclose this evidence in accordance with Rule 26 of the Federal Rules of Civil Procedure. (Doc. 48, at 1–2.) The relevant portions of Janis's declaration contain a link to Showtime's terms of use at the time of the Fight's broadcast and excerpts from the piracy warning that appeared at the beginning of the broadcast. (Doc. 40-3, at 4–6.) This information is relevant to Lesley's alleged willfulness when engaging in copyright infringement. *See infra* Section III.B.iii. Because neither Janis's testimony nor the terms of use

---

[1] Ryan Janis is counsel for Joe Hand.

and piracy warning he referenced were timely disclosed to Defendants, they argue that portions of Janis's declaration, Showtime's terms of use, and the piracy warning must be excluded as evidence. (Doc. 48, at 1–2.)

Pursuant to Federal Rule of Civil Procedure 16(f), a "court may issue any just orders," including sanctions authorized by Federal Rule of Civil Procedure 37(b)(2)(A) if a party or its attorney "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Rule 37(b)(2)(A) specifies that, if a party fails to obey an order to provide discovery, a court "may issue further just orders" including but not limited to: (1) "directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"; (2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; (3) "dismissing the action or proceeding in whole or in part"; or (4) "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

Federal Rule of Civil Procedure 37(c) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). When determining whether a failure to disclose was harmless, the Sixth Circuit instructs courts to consider five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 747–48 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). The burden is "on the potentially sanctioned party to prove

harmlessness." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). Rule 37's exclusionary mandate is, however, tempered by the fact that the Court may "excuse failures to disclose to some degree, i.e., to impose other sanctions in lieu of this sanction." *Id.* at 784 (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *4 (6th Cir. June 25, 1999)) (cleaned up).

Exclusion of Janis's testimony is inappropriate. Joe Hand listed Janis on his witness list and included him as an individual with personal knowledge of the underlying circumstances of this action in its initial disclosures. (Doc. 48-1, at 3; Doc. 48-4, at 2.) Though Joe Hand admits it did not timely disclose its witness list, it represents the one-month delay was due to a scheduling error and that the list "only contained individuals disclosed to [Defendants] many months earlier." (Doc. 53, at 2.) Moreover, Defendants apparently "did not respond to follow-up emails" from Joe Hand's counsel requesting a meet and confer to discuss the witness list; instead, they filed the present motion for sanctions. (*Id.*) Thus, Joe Hand's inadvertent noncompliance was not the product of "willfulness, bad faith, or fault," and, because Janis was included in Joe Hand's initial disclosures, Defendants cannot claim surprise by or prejudice from Joe Hand's delayed witness-list disclosure. *See Howe*, 801 F.3d at 747 (citations omitted). As such, Joe Hand's delay in disclosing Janis as a witness was harmless, and it would be inapt to wholly bar his testimony as a sanction on that basis.

However, Joe Hand's failure to disclose Showtime's terms of use and piracy warning—both of which Janis relied upon in his declaration—warrants correction. Though Joe Hand ambiguously stated in its initial disclosures that it "is in possession of visual evidence" that "will be made available to Defendants via e-mail or other requested electronic means," it did not transmit said evidence, which likely included the piracy warning, to Defendants. (Doc. 48-1, at

4.) Similarly, Joe Hand referenced, without actually disclosing, Showtime's terms of use, though Defendants presumably had access to the terms of use through Showtime's publicly accessible website. (Doc. 1, at 4; Doc. 53, at 4.) Balancing Joe Hand's unjustifiable failure to disclose these documents with Defendants' prior notice of their existence, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for sanctions (Doc. 48). The Court will exclude the evidence from consideration of the present analysis but not from trial. *See Meat Town, Inc. v. Sentinel Ins. Co.*, 852 F. App'x 925, 941 (6th Cir. 2021) (affirming a district court's decision not to strike affidavits as a discovery sanction where the party moving for sanctions had notice of the information prior to the close of discovery).

### ii. *Defendants' Evidentiary Objections (Doc. 47)*

In addition to their request for untimely-disclosure sanctions, Defendants pose several challenges to evidence presented by Joe Hand. (Doc. 47, at 5–9.) First, Defendants object to Janis's reliance on Showtime's terms of use and piracy notice in his declaration. (*Id.* at 5–7.) Defendants also lodge attacks on the admissibility of Joe Hand, Jr.'s[2] affidavit, accusing him of speculation without personal knowledge, providing expert opinion as a lay witness, and violating the best evidence rule. (*Id.* at 8–9.) Joe Hand Jr.'s testimony details the process by which domestic commercial establishments acquire his company's proprietary programming through pay-per-view. (Doc. 40-2, at 27–28.)

Because the Court already barred consideration of Showtime's terms of use and piracy notice as a discovery sanction, *see supra* Section III.A.i, it will **DENY AS MOOT** Defendants' motion to exclude that evidence for purposes of this motion (Doc. 48, at 5–7.) Should

---

[2] Joe Hand, Jr., an individual, is the President of Joe Hand. (Doc. 40-2, at 27.)

Defendants wish to exclude these documents at trial, they may file a motion in limine requesting as such.

Though the relevance of Joe Hand, Jr.'s testimony eludes the Court,[3] it will not be excluded at this juncture. Joe Hand, Jr., as president of a business that licenses sports and entertainment programming to commercial establishments, possesses personal knowledge of the process by which those establishments acquire its programming. His testimony on the subject springs from his position as President of Joe Hand rather than any "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c) (characterizing lay testimony as testimony "not based on scientific, technical, or other specialized knowledge"); *see Joe Hand Promotions, Inc. v. Shepard*, No. 4:12-cv-1728, 2015 WL 1976342, at *3 (E.D. Mo. Apr. 30, 2015) (making the following observation when denying the defendant's motion to exclude a similar affidavit submitted by Joe Hand, Jr.: "The affidavit of Joe Hand, Jr. offers fact testimony based on his knowledge as the President of Joe Hand Promotions, Inc., and the industry in which that business operates. Such testimony is different than testimony providing detail about the technical information as to how a blackbox descrambles reception of a broadcast, which would constitute expert testimony."). The Court also does not detect any best-evidence violation here, as the documents Joe Hand, Jr. relied upon in his affidavit appear to be in the record. *See* Fed. R. Evid. 1002; *see also Straney v. Gen. Motors Corp.*, No. 06-cv-12152, 2007 WL 3346149, at *9 n.9 (E.D. Mich. Nov. 8, 2007), *vacated in part on other grounds*, No. 06-cv-12152, 2008 WL 162554 (E.D. Mich. Jan. 16, 2008) (rejecting a best-evidence challenge because the relied-upon

---

[3] The parties seem to agree that Lesley streamed the Fight through Showtime's website, not through a cable provider. (Doc. 47, at 6.)

documents were already in the record). Consequently, the Court finds no basis to exclude Joe Hand Jr.'s testimony at this time and will **DENY** Defendants' motion to do so (Doc. 47, at 8–9).

B. 56(f) Summary-Judgment Notice

After granting Joe Hand's partial summary-judgment motion (Doc. 39) on the issue of copyright standing (Doc. 71, at 1), the Court alerted Defendants that it was also considering granting summary judgment in favor of Joe Hand as to Defendants' copyright-infringement liability (*id.*). Both parties responded, with Joe Hand referencing its prior briefing on this issue (Doc. 76, at 1 (citing Doc. 40, at 11–13)) and Defendants insisting "[t]here are disputed issues of fact concerning both issues" of willfulness and liability. (Doc. 74, at 1.)

*i. Whether Lesley is Liable*

The Copyright Act creates a federal cause of action for copyright infringement. *See* 17 U.S.C. § 501. "Copyright infringement has two elements: '(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.'" *Bridgeport Music. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004)). Intent is irrelevant to infringement. *See Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 918 (E.D. Tenn. 2006) (citations omitted); *see also King Recs., Inc. v. Bennett*, 438 F. Supp. 2d 812, 850–51 (M.D. Tenn. 2006) (citation omitted). Instead, "a general claim for copyright infringement is fundamentally founded on strict liability." *Bennett*, 428 F. Supp. 2d at 852 (quoting *Bridgeport Music, Inc. v. 11C Music*, 154 F. Supp. 2d 1330, 1335 (M.D. Tenn. 2001)).

Defendants do not dispute Lesley's liability for copyright infringement. In their response to the Court's notice, Defendants state in a footnote: "Lesley does not concede liability if the Supreme Court overturns the Sixth Circuit. But as the law of the case currently exists, there are

11
Case 3:20-cv-00382-TRM-JEM   Document 79   Filed 07/25/23   Page 11 of 19   PageID #: 809

not genuine issues of fact to preclude entry of summary judgment on liability against her." (Doc. 74, at 6 n.1.) Defendants also conclude their response by requesting that the Court "forgo entering summary judgment on any issue other than liability for Lisa Lesley . . . ." (*Id.* at 7.) The Supreme Court denied Defendants' petition for writ of certiorari; therefore, the law of the case remains the same as when Defendants made that statement, and Defendants concede Lesley is liable for copyright infringement. (*See* Doc. 78.)

With or without Defendants' concession, the Court finds there exists no genuine dispute of material fact precluding summary judgment on the issue of Lesley's copyright-infringement liability. It is undisputed that, on August 26, 2017, Lesley livestreamed the Fight at the Bar for the benefit of paying patrons without first purchasing a commercial license from Joe Hand. (Doc. 40-2, at 3.) The Sixth Circuit held that Joe Hand "owned the exclusive right to distribute and publicly display the Fight on the day it aired, August 26, 2017," and thus "has a cause of action against anyone who violated its exclusive rights on the day of the Fight, including Defendants." (Doc. 68, at 13.) Because Joe Hand exclusively owned rights to distribute and display the Fight and Lesley streamed the Fight at the Bar without purchasing a license to do so, the undisputed facts demonstrate that Lesley is liable for copyright infringement. *See Joe Hand Promotions, Inc. v. Thatcher*, No. 5:18-cv-0647, 2021 WL 2627383, at *2 (E.D. Ky. Mar. 29, 2021) (granting summary judgment in favor of Joe Hand when the undisputed facts showed defendants "admitted to the unlicensed commercial exhibition of the [F]ight" at a bar).

### ii. *Whether Griffith is Vicariously Liable*

The Court also notified parties that it was considering granting summary judgment on the issue of Griffith's liability for copyright infringement. Defendants responded in opposition to

the Court's notice, arguing Griffith did not receive any financial benefit stemming from the infringement. (Doc. 74, at 4–5.)

"Vicarious copyright liability is an 'outgrowth' of the common law doctrine of *respondeat superior*, which holds the employer liable for the acts of its agents." *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.2d 259, 262 (9th Cir. 1996)). Thus, "[l]iability for contributory infringement is based on the defendant's relationship to the direct infringement." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (citing *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp, 728, 732–33 (S.D.N.Y. 1996)). The Sixth Circuit has set forth a two-prong test for determining whether a defendant can be held vicariously liable for the infringing actions of his employee. *Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 354 (6th Cir. 2014). "First, the court must determine whether the defendant had the right and ability to supervise the infringing conduct. Second, the court must determine whether the defendant had an obvious and direct financial interest in the infringement." *Joe Hand Promotions, Inc. v. Fountain*, No. 1:19-cv-437, 2020 WL 11563643, at *4 (N.D. Ohio Sept. 28, 2020) (citing *Broad. Music, Inc.*, 754 F.3d at 354) (internal citations omitted). "Because 'vicarious copyright liability is an "outgrowth" of the common law doctrine of *respondeat superior*,' the Sixth Circuit has stated the 'lack of knowledge of the infringement is irrelevant.'" *Bennett v. Navarre Corp.*, No. 3:07-0200, 2008 WL 11510552, at *7 (M.D. Tenn. Jan. 17, 2008) (quoting *Gordon*, 345 F.3d at 925). "For vicarious liability to exist, the financial benefit need not be substantial. Instead, there must only be a causal relationship between the infringing activity and any financial benefit defendant reaps." *Id.* (citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

### a. Whether Griffith Had the Right and Ability to Supervise

There is no genuine dispute of material fact as to whether Griffith had the right and ability to supervise Lesley's streaming of the Fight. The undisputed facts demonstrate that Griffith owned the Bar, leased the premises to Lesley to stream the Fight, and thus possessed the right and ability to supervise Lesley's conduct at the time of the infringement. (Doc. 40-4, at 5); *see J & J Sports Prods., Inc. v. Jaschkowitz*, No. 5:14-cv-440, 2016 WL 2727015, at *9 (E.D. Ky. May 6, 2016) ("There is no question that [the defendant] satisfies prong one—that, as "owner" of Red Ruby Properties, LLC, he had a right and ability to supervise the conduct . . . on the night in question. As the owner and supervisor, [the defendant] plainly had the right and the ability to supervise the conduct . . . .") (citations omitted); *see also Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 WL 6243824, at *5 (W.D. Tenn. Dec. 3, 2013) ("[The defendant] owns and manages the Establishment, which gave him the right and ability to supervise the violations and the requisite financial interest, notwithstanding his decision not to be present during the Events. [The defendant] is vicariously liable for each [infringement] violation.") (citations omitted). Griffith need not have been present at the time of streaming or even have been aware of its occurrence to be held vicariously liable for Lesley's actions. *See Broad. Music, Inc.*, 754 F.3d at 355 ("A defendant's ignorance about the infringement or the performances does not blunt vicarious liability.").

### b. Whether Griffith Had an Obvious and Direct Financial Interest

The undisputed facts also demonstrate Griffith possessed an obvious and direct financial interest in Lesley's infringement. Though the mere fact that Griffith leased the Bar to Lesley may be insufficient to support a vicarious-liability finding, Griffith was in a position to receive more than just that fee. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907

14

Case 3:20-cv-00382-TRM-JEM   Document 79   Filed 07/25/23   Page 14 of 19   PageID #: 812

F. Supp. 1361, 1376 (N.D. Cal. 1995) ("[W]here a defendant rents space or services on a fixed rental fee that does not depend on the nature of the activity of the lessee, courts usually find no vicarious liability because there is no direct financial benefit from the infringement.") (collecting cases). The Bar advertised on its Facebook page that it would be showing the Fight, taking care to broadcast that it would be "the ONLY place in Kingsport" doing so and promising that patrons "won't get in cheaper ANYWHERE else!" (Doc. 40-3, at 10, 12.) Yes, only Lesley pocketed the cover charge, but the Bar's advertisement demonstrates Griffith also stood to benefit from the Fight's draw. *See Herbert v. Shanley Co.*, 242 U.S 591, 594 (1917) ("If the rights under the copyright are infringed only by a performance where money is taken at the door, they are very imperfectly protected."). And benefit he did. Griffith acknowledges he had a "financial interest in the [Bar's] business operations," which includes the provision of food and alcohol. (Doc. 40-4, at 6, 8.) Even more directly, he admits he "benefitted from food and drink sales" the night of the Fight. (*Id.* at 12.) Because the undisputed facts establish Griffith marketed the Fight as a draw to potential Bar patrons and benefited from food and alcohol sold to patrons the night of broadcast, the Court finds he had a direct financial interest in Lesley's infringing behavior. *See G&G Closed Cir. Events, LLC v. Sandoval & Sandoval, Inc.*, No. CV 18-1026, 2019 WL 5079767, at *4 (D. Md. Oct. 10, 2019) (granting summary judgment as to vicarious liability when it was undisputed that a restaurant advertised an illegally shown boxing match because the restaurant owners "generally benefit financially from the [r]estaurant's activities[ and] had a direct interest in the financial benefits of the broadcast, such as food and drink expenditures made by patrons watching the [match]"); *see also J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802 (10th Cir. 2016) (noting that a bar owner had an obvious and direct financial

interest in an illegally displayed television program because she admitted the programming was of interest to the bar's patrons and sold beer to them as they watched it). [4]

Because the undisputed facts establish Griffith had the right and ability to supervise Lesley's broadcasting of the Fight and possessed an obvious and direct financial interest in the broadcast, he is vicariously liable for Lesley's direct infringement. *See Fountain*, 2020 WL 11563643, at *4 (citing *Broad. Music, Inc.*, 754 F.3d at 354). Therefore, summary judgment will be **GRANTED** in favor of Joe Hand as to Griffith's liability.

### iii. *Whether Infringement was Willful*

Joe Hand argues Lesley's infringement was willful because she was "placed on notice of commercial restrictions by both an on-screen warning and written contractual agreement."[5] (Doc. 40, at 9.) Specifically, Joe Hand points to Showtime's terms of use, which it argues Lesley agreed to by using the Showtime website, and an on-screen piracy warning that appeared at the beginning of the Fight broadcast. (*Id.* at 9–10.) Lesley, in turn, challenges the sufficiency and admissibility of the evidence Joe Hand references in support of his willfulness claim. (Doc. 47, at 9.) Lesley argues that the Court should not consider Joe Hand's proffered evidence of willfulness, because it is inadmissible hearsay and was previously undisclosed. (*Id.*) And, even

---

[4] Though Lesley avers that attendance at the Bar during the Fight was "about the same as any of the previous Saturday evenings at [the] Bar," the direct-and-obvious-financial-benefit standard does not appear to require proof of an actual increase in sales or patronage due to the infringing behavior. *See J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (noting that the direct financial interest need not be "proportional or precisely calculable") (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F.Supp.3d 261, 296 (E.D. Pa. 2014)); (Doc. 40-2, at 3.)

[5] Joe Hand does not appear to argue in its summary-judgment motion that Griffith's alleged infringement was willful. Though the relevant section heading collectively characterizes Defendants' infringement as willful, Joe Hand only discusses and points to evidence in support of Lesley's willfulness. (*See* Doc. 40, at 8–11.) Therefore, to the extent Joe Hand seeks it, the Court finds it inappropriate to grant summary judgment against Griffith on the issue of willfulness.

if it were to consider it, Lesley states "there is no evidence Defendants saw any notice, saw any terms of use, or agreed to any terms of use" prior to streaming the Fight. (*Id.*) Because the Court granted in part Defendants' motion to bar Showtime's terms of use and piracy warning, *see supra* Section III.A.i, it will not consider that evidence in its willfulness analysis.

When a defendant's copyright infringement is willful, plaintiffs are entitled to recover enhanced damages pursuant to 17 U.S.C. § 504(c)(2). "For infringement to be 'willful,' it must be done 'with knowledge that [one's] conduct constitutes copyright infringement'" or with reckless disregard for the rights of the copyright holder. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007) (quoting *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F. 3d 1381, 1392 (6th Cir. 1996)). In the context of unauthorized streaming, willfulness "amounts to showing 'disregard for the governing statute and an indifference to its requirements'" by engaging in "repeated violations or 'sophisticated understanding of the satellite programming industry[.]'" *Joe Hand Promotions, Inc. v. Young*, No. 5:09-cv-157, 2010 WL 3341449, at *3 (W.D. Ky. Aug. 24, 2010) (first quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985); and then quoting *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08-cv-1259, 2009 WL 1767579, *6 n. 2 (N.D. Ohio June 22, 2009)). "The determination of willfulness, which requires the assessment of the defendant's intent, is an issue of fact." *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 775 (E.D. Mich. 2014) (quoting *Int'l Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 380 (7th Cir. 1988)). Generally, factual issues are not susceptible to summary judgment and should instead go to a jury. *Id.* (first citing *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.,* 446 F. Supp. 2d 1164, 1174 (E.D. Cal. 2006); and then citing *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 936 (N.D. Cal. 1996)). But "where the relevant facts are admitted or otherwise undisputed, willfulness can be

appropriately resolved on summary judgment." *Id.* (citing *UMG Recordings, Inc.*, 446 F. Supp. 2d at 1174).

There is a genuine dispute of material fact as to whether Lesley's infringement was willful. Lesley claims she purchased the Fight from Showtime and was unaware doing so was in violation of Joe Hand's copyright. (Doc. 47, at 12.) She "had no correspondence with [Joe Hand]" and denies any knowledge that it was necessary to "order the [Fight] from Joe Hand" before streaming. *See Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 WL 6243824, at *4 (W.D. Tenn. Dec. 3, 2013) (noting that a defendant's previous contact with Joe Hand about streaming "demonstrat[ed] actual knowledge of the law and the correct process of obtaining authorization"); (Doc. 40-7, at 38.) Lesley also maintains she has "no recollection of agreeing to any terms of use" before purchasing a license from Showtime and does "not recall seeing the copyright warning" Joe Hand mentions in his summary-judgment motion. (Doc. 47-2, at 1–2.) Insistence that a plaintiff believed she legally purchased rights to show the Fight, as stated in discovery answers, has been found sufficient to preclude summary judgment on willfulness in an almost identical factual context. *See Thatcher*, 2021 WL 2627383, at *3 (denying summary judgment on the issue of willfulness upon finding a plaintiff raised a genuine issue of material fact as to willfulness when stating "it believes it had legally purchased the rights to show the [F]ight at the restaurant . . . on a business cable television account"); *see also Calibrated Success*, 72 F. Supp. 3d at 776 (quoting *Arnstein v. Porter*, 154 F.2d 464, 471 (2d Cir. 1946)) ("As the Second Circuit noted, 'where, as here, credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable.'"). And at least one court, again encountering nearly indistinguishable factual circumstances, refused to impose enhanced damages when Joe Hand lacked evidence showing the defendant engaged in repeated

18
Case 3:20-cv-00382-TRM-JEM   Document 79   Filed 07/25/23   Page 18 of 19   PageID #: 816

violations or otherwise "egregious action." *Young*, 2010 WL 3341449, at *4 (first citing *Buckeye Cablevision, Inc. v. Sledge,* No. 3:03CV7561, *3 (N.D. Ohio Apr. 8, 2004); and then citing *Joe Hand Promotions v. Burg's Lounge,* 955 F. Supp. 42, 44 (E.D. Pa. 1997)). Because Lesley has raised a genuine dispute of material fact regarding whether her actions constituted willful copyright infringement, the Court will **DENY** summary judgment on the issue of enhanced damages for Lesley's alleged willful infringement.

## IV. CONCLUSION

For the aforementioned reasons, the Court will **GRANT** Griffith and Lesley's motion for reconsideration (Doc. 75). The Court **GRANTS IN PART** summary judgment in favor of Joe Hand as to Defendants' liability for copyright infringement and **DENIES IN PART** summary judgment on the issue of willfulness (Doc. 71). On reconsideration, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for sanctions (Doc. 48) and **DENIES** Defendants' motion to exclude certain evidence (Doc. 47). The Court will issue a revised scheduling order setting this matter for trial to allow for a jury to assess damages.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**